# EXHIBIT A

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

| | |
|---|---|
| **NOTICE TO DEFENDANT:** <br> *(AVISO AL DEMANDADO):* <br> CHIPOTLE MEXICAN GRILL, INC., a California Corporation <br><br> **YOU ARE BEING SUED BY PLAINTIFF:** <br> *(LO ESTÁ DEMANDANDO EL DEMANDANTE):* <br> MELISSA CRUZ, Individually and on Behalf of All Others Similarly Situated | **FOR COURT USE ONLY** <br> *(SOLO PARA USO DE LA CORTE)* <br><br> **CONFORMED COPY** <br> **ORIGINAL FILED** <br> Superior Court of California <br> County of Los Angeles <br><br> **JUL 24 2019** <br><br> Sherri R. Carter, Executive Officer/Clerk of Court <br> By _____, Deputy <br> Steven Drew |

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is: <br> *(El nombre y dirección de la corte es):* Stanley Mosk Courthouse <br> 111 North Hill St. <br> Los Angeles, CA 90012 | **CASE NUMBER:** <br> *(Número del Caso):* <br> **19STCV25669** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Quyen C. Hoang, 17011 Beach Blvd., Suite 900, HB 92647 714-369-8152

| DATE: <br> *(Fecha)* **JUL 24 2019** | Sherri R. Carter, Clerk <br> *(Secretario)* Clerk, by | **STEVEN DREW** | , Deputy <br> *(Adjunto)* |
|---|---|---|---|

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☑ on behalf of *(specify):* Chipotle Mexican Grill, a California Corporation

   under: ☑ CCP 416.10 (corporation)       ☐ CCP 416.60 (minor)
         ☐ CCP 416.20 (defunct corporation)       ☐ CCP 416.70 (conservatee)
         ☐ CCP 416.40 (association or partnership)       ☐ CCP 416.90 (authorized person)
         ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| | |
|---|---|
| Form Adopted for Mandatory Use <br> Judicial Council of California <br> SUM-100 (Rev. July 1, 2009) | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465 <br> www.courtinfo.ca.gov |

1  LAW OFFICES OF QUYEN C. HOANG
   QUYEN C. HOANG (CBN 192126)
2  17011 Beach Blvd., Suite 900
   Huntington Beach, CA  92647
3
   Telephone: (714) 369-8152
4
5  Attorney for Plaintiff,

6

7                    SUPERIOR COURT OF CALIFORNIA

8           COUNTY OF LOS ANGELES – CENTRAL DISTRICT

9

10 MELISSA CRUZ, Individually and on    )  Case No.:    **19STCV25669**
   Behalf of All Others Similarly Situated, )
11              Plaintiff,              )  CLASS ACTION
                                        )
12                                      )  COMPLAINT FOR VIOLATION OF:
                                        )
13         vs.                          )  1. Consumer Legal Remedies Act,
                                        )     Cal. Civ. Code §§ 1750, et seq.;
14                                      )
15 CHIPOTLE MEXICAN GRILL, INC., a     )  2. False Advertising Law,
   California Corporation               )     Cal. Bus. & Prof.   Code §§ 17500, et
16                                      )     seq.;
                                        )
17         Defendants.                  )  3. Unfair Competition Law, Cal. Bus. &
                                        )     Prof. Code §§ 17200, et seq.
18                                      )
19                                      )  DEMAND FOR JURY TRIAL
                                        )
20                                      )
                                        )
21                                      )
                                        )
22                                      )

23      Plaintiff Melissa Cruz ("Plaintiff"), by and through her attorneys, individually and on

24 behalf of all others similarly situated, brings this Class Action Complaint ("Complaint") against

25 Defendant Chipotle Mexican Grill, Inc., a California Corporation ("Chipotle" or "Defendant"), and

26 makes the following allegations based upon knowledge as to herself and her own acts, and upon

27 information and belief as to all other matters, as follows:

28

---
-1-
Complaint

CONFORMED COPY
ORIGINAL FILED
Superior Court of California

JUL 24 2019

Sherri R. Carter, Executive Officer/Clerk of Court
By_____, Deputy
       Steven Drew

BY FAX

INTRODUCTION

1. This is a class action brought by Plaintiff individually and on behalf of all other individuals similarly situated in California who purchased or paid for Chipotle food and beverage products ("Food Products") marketed, advertised, and/or sold by Defendant during the period from April 27, 2015 to the present (the "Class Period").

2. Chipotle owns and operates a nationwide chain of casual Mexican fast-food restaurants that sell four main menu items: burritos, burrito bowls (a burrito without the tortilla), tacos, and salads. Since 2009, Chipotle has marketed itself as serving "Food With Integrity," and sets itself apart from other fast-food chain competitors by claiming to serve locally-sourced produce, antibiotic and hormone free livestock raised in humane conditions, and produce farmed using environmentally-friendly techniques. Chipotle claims that "[w]ith every burrito we roll or bowl we fill, we're working to cultivate a better world."

3. Chipotle has carefully tailored its public image by marketing to healthy-lifestyle and environmentally conscious consumers that it knows are willing to pay premium prices for its food products because they align with the consumers' ethical eating choices. As part of this public image, beginning in 2013, Chipotle began listing its food ingredients on its website, indicating whether an ingredient was organic, locally produced, had a preservative, or contained a genetically modified organism ("GMO").

4. The potential health impact of GMOs has been the subject of much scrutiny and debate within the food and science industries, but Chipotle knows customers attach an unhealthy, negative perception towards them. Capitalizing on this perception, in April 2015, Chipotle took the unprecedented step among fast-food restaurants by launching a multi-media publicity campaign touting that it was the "first national company" in the food industry to serve a menu devoid of

1    GMOs. Chipotle has plastered its GMO-free message on television commercials, billboards, social

2    media, store fronts, and in-store signage. Chipotle represents to customers that, if they eat at

3    Chipotle, they will not be eating GMOs. Chipotle's marketing campaign has been a resounding

4    success for the company, which saw a 100+ point jump in its stock price on the New York Stock

5    Exchange in the four months since its public announcement.

6

7    5. But as Chipotle told consumers it was "G-M-Over it," the opposite was true. In truth and

8    in fact, Chipotle's menu has never been at any time free of GMOs. Specifically, Chipotle's menu

9    is substantially reliant on Soybean and Corn products both of which even in "Non-GMO' form

10   contains low level presence of GMO's. While Chipotle knows that its menu contains ingredients

11   with low levels of GMOs, it takes no meaningful steps to clarify consumer misconceptions in its

12   advertisements and on its billboards, both in stores and in print, which instead say "all" of the

13

14   ingredients used in its Food Products are "non-GMO". Moreover, it stood idly by and approved if

15   not out rightly encouraged the publics misconception that its food was entirely GMO free even

16   while it knew that it was not.

17   6. As a result of Chipotle's conduct, customers like Plaintiff Cruz have been

18   deceived into buying Chipotle's food, or paying more for Chipotle products than they would have

19   otherwise paid. Accordingly, Plaintiff brings a proposed class action against Chipotle arising from

20   Chipotle's deceptive conduct that seeks injunctive and other equitable relief and will be later

21   amended to request restitution and disgorgement of proceeds from the offending practice as set

22   forth herein.

23

24   ///

25

26

27   ///

28

-3-
**Complaint**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PARTIES

7. Plaintiff Melissa Cruz is a resident of Los Angeles, California.  During the Class Period, she purchased Chipotle's Food Products, relying on Defendant's "Food With Integrity" campaign and believing that its Food Products were a healthy alternative based on Chipotle's representations. Plaintiff in particular further relied on the representation that Defendant's Food Products did not contain any GMO ingredients, having seen or heard advertisements, and in-store signage and staff representations that Chipotle is "GMO-free" and used "only non-GMO ingredients," in deciding to continue her purchases at Chipotle.  Plaintiff would not have purchased from Defendant at the price she had paid, or purchased it at all, had she known that the representations made concerning Defendant's Food Products were materially false and misleading. Plaintiff would like to patronize and would patronize Chipotle in the future if it were to correct its offending conduct.

8. Defendant Chipotle Mexican Grill, Inc., is a California corporation headquartered in Newport Beach, CA.  Founded in 1993, Chipotle develops and operates fast-casual and fresh Mexican food restaurants.  As of February 2019, Chipotle has over 2,500 restaurants throughout the United States, with over 400 restaurants in California alone.  Chipotle has reported revenues of $1.2 billion.

JURISDICTION AND VENUE

9. This Court has jurisdiction over the subject matter of this action because it strictly relies on California laws.

10. This Court has personal jurisdiction over Defendant because Defendant is a resident of this State and is authorized to do business and does conduct business in California, has specifically marketed, advertised, and sold its Food Products in California, and has sufficient minimum contacts

-4-

**Complaint**

with this state and/or sufficiently avail itself of the markets of this state through its promotion, sales, and marketing within this state to render the exercise of jurisdiction by this Court permissible.

11. Venue in this Court is proper because Plaintiff is a resident of this County and the transactions and events giving rise to this case arose in Los Angeles.

FACTUAL ALLEGATIONS

I. Genetically Modified Organisms

12. Generally speaking a "GMO" is usually a plant hybrid containing a "biotech" or "transgenic" trait derived from the genetic material of a different donor organism, the process of which does not occur in nature.

13. With regards to Chipotle, the subject of concern herein is its reliance on Soybeans and Corn as a major ingredient that comprises the bulk of the food it serves. Specifically, Chipotle's "Sofritas" is a soy based vegetarian product that is offered alongside its traditional chicken, pork and beef proteins. Corn is served in the form of taco shells, tortilla chips, corn salsa and until about late 2017 to early 2018 when it was discontinued, Chipotle had corn tortilla as a Burrito wrapping.

14. As of 2018 GMO soybeans represents 94% of all soybean acreage planted in the U.S.[1] As of 2018, GMO corn represents about 92% of all corn acreage planted in the U.S.[2] Respectively, of those 6% and 8% remaining planted acreage grown with "conventional" Non-GMO seed, said acreage are further split into several specialty niche markets such as 'non-gmo', organic and other specified niche traits such as high protein, high oil content and white, blue or waxy in the case of corn. Of these remaining "specialty markets" only the "non-gmo market" is concerned about the

---

[1] https://www.ers.usda.gov/data-products/adoption-of-genetically-engineered-crops-in-the-us/recent-trends-in-ge-adoption.aspx

[2] http://www.worldofcorn.com/#biotech-shares-of-us-corn-acres-planted

non-gmo purity level of the product.[3]  Thusly, the true "non-gmo" planted acreage in the U.S is significantly less than the 6% and 8% as represented by goverment data

## II. Non GMO Purity

A.      Purity Levels

15. According to a 2018 Pew Research Center survey, about 49% of all U.S. respondents believe that consuming GMO foods is worse for one's health than consuming foods made without GMO's.[4]

16.  Because the safety and the perception that GMOs are unnatural and harm the environment is so prevalent, regulations around the world have been promulgated to control the production and marketing of GMOs and of products derived from GMOs. Calls have been made for the banning of GMO imports in the EU and Japan, and laws have been passed mandating the labeling of genetically modified (GM) products in the EU and Asia.[5]

17.  The primary driver for non-GMO crops has been and remains the export market, mainly in Asia.  Japan and Korea are the 2 major US export customers for this grain. Both countries have GMO label laws in place that require notice on a product label of the presence of biotech traits. Many Japanese and Korean consumer product companies, particularly food companies, choose to source non-GMO crops in order to avoid putting such a notice on their products.

18. Japan defines non-GMO corn as that corn which is a minimum of 95% corn of no detectable traits. So, Japan has set a 5% threshold of tolerance for unintended or "adventitious"

---

[3] https://emergence.fbn.com/real-difference-between-conventional-nongmo-organic-corn

[4] www.pewresearch.org/science/2018/11/19/public-perspectives-on-food-risks/

[5] https://www.iatp.org/sites/default/files/Economics_of_Non-GMO_Segregation_and_Identity_.htm

presence (hereinafter "AP") of biotech traits in the corn grain they import. When non-GMO corn is originated in the United States, these tolerance thresholds are risk-managed and usually trade at 3% levels. South Korea, on the other hand, uses a minimum standard of 97%, thus a threshold of tolerance for AP of 3%. These programs often trade at the point of origination at a 2% threshold of tolerance. Finally, Europe has the most restrictive standards for non-GMO, employing a 99.1% level of no detectable GMO traits, or a 0.9% threshold of tolerance for the adventitious presence of these traits.  These facts apply to all other GMO crops.

19.  In comparison, the U.S. non-GMO domestic market is relatively small. There are growers and consumers alike who demand choice and prefer to not utilize biotech traits. However, in the U.S. market there is currently no standard definition of "non-GMO"; rather, it is typically whatever the particular market/contract buyer wants it to be. This ambiguity presents an obvious challenge for growers and buyers.  As non-GMO purity level starts from the purity of the seeds used to produce the non-GMO crop, seed manufacturers respond by producing seeds with a purity level that would satisfy the larger regulated/export market demands.  This applies to all non-GMO production, not just production for US markets. Growers must know for certain if the threshold of tolerance for GMO traits is defined in the contract as 3%, 2%, 0.9%, or some other standard. [6] In the U.S. as a practical matter the only non GMO "purity standard" is that set forth by the "Non GMO project" verified standard that sets a limit of adventitious GMO presence at 0.9%.  This 0.9% is often risk managed by starting out with purchasing crop seeds with a 0.5% purity level or less.  It is impossible to produce crop seeds and therefore crops with 100% non GMO material. [7]

---

[6] https://www.pioneer.com/home/site/us/agronomy/corn-specialty-markets/

[7] Id., see also https://emergence.fbn.com/real-difference-between-conventional-nongmo-organic-corn

B. Seed Purity

20.   There is no practical way to produce crops that has a lower GMO presence than the parent seed.  In the U.S., seed producers offer Ultra-Pure/High Purity seeds from 0.5% down to 0.1 % with NO seed producers offering seeds with absolute 0.0 % GMO presence.  Pure grade Non GMO seeds are offered at 1%.  The more common Conventional/Non-GMO seeds are offered with purity levels of around 1%-5%.

C.  Unavoidable Contamination

21.   Starting with the purity level of the seeds planted as the base level, crops are subject to further contamination during each phase of production such as planting, growing, and harvesting the crop; and drying, storing, handling and transporting the grain.

22.   Corn is a cross-pollinating crop in which most pollination results from pollen dispersed by wind and gravity.  As such it is more susceptible to "pollen drift" as pollen from GMO corn in neighboring fields contaminate Non GMO corn crops.  As GMO corn comprises 92% of the U.S. corn acreage planted and each individual corn plant at its peak can produce 500,000 pollen grains per day[8], it is practically a given that genetic contamination occurs in Non GMO corn crops.  Unlike Corn, Soybeans are self-pollinating and thus less susceptible to pollen contamination.  However, because of the sheer number of acreages planted, soybeans contamination risks occur during harvest and post-harvest processing of the crop and the grains derived therefrom.

23.   As a major buyer of agricultural products, Chipotle has or should have a clear and stated tolerance threshold for the adventitious presence of GMO contamination in the soybean and corn products it purchases.  Based on the current state of the agricultural industry, it is impossible for Chipotle to contract for 100% non-GMO content in its purchases.  It is also impractical to the point

---

[8] https://www.lathamseeds.com/2011/07/too-hot-for-corn/

-8-
**Complaint**

of impossible for Chipotle to contract for 99.9%-99.5%. non-GMO purity in its purchases. Regardless of what the purity level Chipotle demands from its suppliers, the fact that its tolerance for low level presence of GMO's in its foods is less than 100% makes its no-GMO claims deceptive and misleading.

### III. Chipotle's Advertising and Marketing

A. Chipotle's "Food With Integrity" Campaign

24. Since 2009, Chipotle has marketed, sold, and prided itself on serving "Food With Integrity," promoting its brand and Food Products as a leader in healthier food and ethical farming practices.  In addition to print, outdoor, transit and radio ads, Chipotle conducts online advertising and strategic promotions to demonstrate its "Food With Integrity" mission.  Chipotle's video and music programs, events and festivals such as its "Cultivate Festival," and digital, mobile, and social media campaigns (such as its three-minute "The Scarecrow" and two-minute "Back to the Start" Youtube.com campaigns) have permitted Chipotle to differentiate itself from other fast food companies as the industry leader in being health and environmentally conscious.

25. Beginning in March 2013, Chipotle released a comprehensive list of all of its ingredients on its online website, which was reportedly a first among fast-food chains.  When Chipotle first listed its ingredients online, 12 of the 24 ingredients listed contained the presence of GMOs, including, but not limited to, Chipotle's tortillas, rice, salad dressing, tortilla chips, and its meat products.   Chipotle stated, however, that it was committed "to remov[ing] the GMOs from"

its Food Products "to the fullest extent possible."  Concomitantly, on social media Chipotle was

announcing that it was working towards being GMO free[9] and that it would soon be "GMO free"[10]

### B. Chipotle's April 2015 "GMO Free" Announcement

26. On or about April 27, 2015, Chipotle announced that as part of its "Food with Integrity"

brand that it would only prepare food with ingredients that are free of GMOs. Steve Ells, Chipotle's

founder and co-chief executive at the time, stated in regards to being "GMO free" that, "Chipotle is

showing that there is a better way to do fast food,... They say these ingredients are safe, but I think

we all know we'd rather have food that doesn't contain them."[11]

27. Chipotle's announcement was a strategic marketing campaign to entice new health

minded consumers and retain current ones.  As Phil Lampert noted in his April 28, 2015 Forbes'

article, "Chipotle's Non-GMO Policy Changes Everything," "Chipotle's move will no doubt attract

new customers to the chain's restaurants and most likely bring in an entirely new customer base,

not for the food, but because they align with the chain's ethical positions.  Some will like the food

and come back for more."

28. In an April 30, 2015 article for New York Magazine, Jesse Singal pointed out that

Chipotle would "score points" by advertising that it was "ditching" GMOs:

Most consumers aren't going to carefully analyze the scientific consensus on a given issue – who

has time for that?  Rather, they use mental shortcuts, taking cues from people and institutions they

---

[9] On July 15, 2014 Chipotle tweeted from its official twitter account @Chipotletweets, "Thanks for being a fan! We

aren't completely **GMO** free, but we're working on it."

[10] On January 30, 2015 Chipotle social media strategist Rusty Parch, tweeted from Chipotle's official twitter account

"We are almost **GMO** free!..." -Rusty

[11] https://money.cnn.com/2015/04/26/investing/chipotle-gmo-free/index.html

---

trust. Chipotle has developed a reputation for corporate responsibility and making careful decisions about the ingredients on its menu, and Chipotle ditched GMOs — therefore, GMOs must be bad. Chipotle scores points, science loses.

29. On billboards and in its marketing and advertising, Chipotle declared that its Food Products are made from "non-GMO ingredients." Chipotle also took to social media, announcing to its 684,000 followers on Twitter that: "We're now making all of the food at our US restaurants with only non-GMO ingredients."

30. On store fronts, Chipotle advertised "A Farewell to GMOs," noting that "[w]hen it comes to our food, genetically modified ingredients don't make the cut"

31. Defendant advertises and represents on its in-store billboards that it uses "only non-GMO ingredients," representing to consumers that all of its ingredients, do not contain GMO's.

32. Defendant's nationwide advertising campaign for its Food Products has been extensive and comprehensive throughout the Class Period. Defendant has spent tens of millions of dollars conveying to consumers throughout the United States its deceptive message that Chipotle's Food Products use "only Non-GMO ingredients" and leading reasonable consumers including plaintiff and class members that Chipotle serves food that does NOT contain GMO's.

33. As a result of Chipotle's deceptive and misleading messages and omissions about its Food Products, conveyed directly through its marketing and advertising campaigns, it has been been very successful in its "Food With Integrity" brand in general and with its "Only non-GMO ingredients" campaign specifically, that it's brand is synonymous with a healthier alternative to its fast food competitors and a convenient place to eat to avoid consuming any GMO's.

As such, Chipotle was able to charge consumers a significant price premium for its Food Products over other fast-food restaurants by convincing consumers to pay for a purportedly superior product, as its advertising and marketing misleadingly convey.

III. Defendant's False, Misleading and Deceptive GMO Free Claims

34. Chipotle's false and misleading representation to consumers claiming that its food products do not have GMOs have been, and continue to be, material to consumers, including Plaintiff and other members of the putative class, and Defendant knows that its misleading representations are material in nature.  Were the presence of GMOs in food not material to consumers, Chipotle would not focus its marketing and advertising to claim that it is the first GMO-free fast-food restaurant, and Chipotle would not be able to charge customers premium prices for its purportedly "non-GMO" Food Products.

35.  Defendant's advertising and marketing claims that its Food Products are made with "only Non-GMO ingredients" and that "all" of its Food Products are "only non-GMO" or that its products do not have GMO's are false, misleading, deceptive, unfair and unconscionable because Chipotle knows that it's food products, namely the corn and soy based food products it serves contains or is likely to contain low level presence of GMO's from at least 0.1% to as much as 3% - 5%.  Additionally, Defendants marketing claims are deceptive as it misleads reasonable consumers into believing that there is NO risk of consuming GMO's from its food when in truth and in fact, consumers continue to be at risk of consuming GMO's.

36. Among its otherwise false and misleading statements on its website, Chipotle concedes in disclaimers that its foods are in fact NOT GMO free.   Chipotle's disclaimer states, "…we identify our ingredients as "non-GMO" rather than "GMO-free" or other terminology that

might be misunderstood as a guarantee of absolutely zero genetically engineered content."[12] However, this disclaimer itself is patently false as Chipotle has been and continues to encourage, condone and or otherwise benefit from the publics confusion as to Defendant's distinction between "non GMO" and "GMO-free. Specifically, as part of its "GM Over it" campaign, Chipotle participated in wide spread news media coverage claiming that Chipotle is GMO-free.[13] Despite defendants' knowledge of the falsity of these claims, Defendant did not correct the record choosing to benefit from the confusion that it had created.

37. Leading up to the "GM Over it" campaign, on its official social media twitter account, Chipotle's Social Media Manager Joe Stupp, on July 20, 2013 announced, '…but right now the only **guaranteed GMO** free corn is in our salsa. On July 30, 2013 Mr. Stupp stated "[t]he tofu and the corn salsa are both **GMO free**." Social Media Strategist Candice Stewert, on February 3, 2014 announced "you'll be glad to know we'll be **GMO free** by the end of the year." During the GM-Over it" campaign, Defendant on social media would also "like"[14] twitter posts that mistakenly claim that Defendant was GMO free.[15] On May 17, 2015, a user on twitter, tweeted to Defendant, "@ChipotleTweets thank you for going #GMOfree #Innovative #Progress #Leader." Chipotle's

---

[12] https://www.chipotle.com/contact-us

[13] See "Chipotle Is Now GMO Free", https://money.cnn.com/2015/04/26/investing/chipotle-gmo-free/index.html; see also https://www.huffpost.com/entry/chipotle-gmo-free-food_n_7149040; see also https://www.fastcompany.com/3045494/chipotle-is-now-completely-gmo-free; see also https://www.foxnews.com/food-drink/chipotle-becomes-first-major-chain-to-go-entirely-gmo-free

[14] On social media site Twitter "Likes are represented by a small heart and are used to show appreciation for a Tweet.

[15] On Jun 4, 2015, Defendant "liked" a tweet from a user claiming, "@ChipotleTweets had a yum burrito for lunch yesterday. Thanks for going #gmofree. On April 27, 2015 Defendant liked a tweet claiming, "@ChipotleTweets Thank you for standing ur ground, hearing the voice of ur customers, going against the grain #GMOfree #LEADtheWay";

---

1   Social Media Manager Joe Stupp, respondent on the same day saying," @Dr_RyanG Thank you for

2   your support! –Joe."

3       38.  Even after the "GM Over it" campaign was concluded, Chipotle continued to reinforce

4   the publics mistaken belief that it was "GMO free".  For example, a twitter user on April 17, 2017

5   proclaimed to defendants official twitter account, "@ChipotleTweets I somehow missed the

6   awesome news that you are now #GMOfree. So excited to have a safe fast food option now!" On

7   April 17, 2017 Defendant responded, "Indeed, and that news is about two years old ☺ check out

8   http://www.chipotle.com/real -Zach".   On July25, 2017, chipotle "liked" a user post claiming,

9   "You are the only restaurant that truly cares about the people!!  ❤�015ususwe love you!! #GMOfree

10   4 life ✕✕☒  �015 �015".

11       39.  To the extent fast-food consumers review Chipotle's website, it is misleading because

12   Defendant only discloses this information on its website because it knows its fast-food

13   customers never need to visit Chipotle's website to buy food, and are highly unlikely to seek out

14   this information when simply deciding where to get lunch or dinner.  Moreover, the disclaimer is

15   hidden deep on its website requiring at least 4 mouse clicks to navigate to its location assuming the

16   user knows that the GMO information is under its 'Frequently Ask Questions (FAQ's) page which

17   itself is under the "Contact Us" page.

18       40.  Consumers as a practical matter rely on Chipotle's internet, mass media, and in-store

19   advertising as well it's "brand" as being GMO-free to choose Chipotle over its competitors because

20   of materially false information Chipotle has promulgated into the public conscious regarding its

21   Food Products. Thus even if the Non-GMO marketing campaign ends, the belief that Chipotle is

22   "GMO free" is now so ingrained in its Brand and slogan of "Food with Integrity", that absent a

good faith corrective advertising campaign, the deception continues and plaintiff and other reasonable consumers will continue to be harmed.

41. Aside from the one online disclaimer about its food being actually NOT GMO-free, Chipotle has not provided similar disclaimers in its stores or through any of the various mediums which it uses to reach out to the public. Moreover, it has not taken the steps to train its employees to distinguish the difference between non-GMO and GMO-free and that Chipotle in fact does NOT serve GMO free food.

42. Food is considered misbranded under the Federal Food, Drug and Cosmetic Act ("FDCA") if "its labeling is false or misleading in any particular," or if it does not contain certain information on its label or labeling. See 21 U.S.C. § 343. If any representation in the labeling is misleading, the entire food is misbranded. Because Defendant has made and continues to make misleading claims that "all" of the ingredients comprising its Food Products are "non-GMO" and or GMO-Free when the representation is false and misleading, Chipotle is in violation of the FDCA.

IV. Chipotle's Concealment

43. Defendant is and remains under a duty to Plaintiff and the putative class to disclose the facts, as alleged herein. The duty to disclose the true facts arises because, as marketer and seller, Defendant is in a superior position to know the true character and quality of its Food Products and the true facts are not something that Plaintiff and putative class members could, without reasonable diligence, have discovered independently prior to purchase. Furthermore, said duty to disclose also arises from Defendants conduct in spreading, enabling, condoning or otherwise encouraging the mistaken belief that all its food products are GMO-free.

///

44. The facts concealed and/or not disclosed to Plaintiff and the Class, specifically that consumers are not consuming "only non-GMO ingredients" and or "GMO-free ingredients" or that they in fact are indeed consuming food that are or are highly likely to contain genetically engineered germplasm are material facts in that a reasonable person would have considered them important in deciding whether or not to purchase (or pay the same or premium price for) a Chipotle Food Product.

45. Defendant intentionally concealed and/or failed to disclose to consumers that not all of the ingredients Chipotle uses in its Food Products are GMO-free for the purpose of inducing Plaintiff and putative class members to act thereon.

46. Plaintiff and the putative class members justifiably acted upon, or relied upon to their detriment, the concealed and/or non-disclosed material facts as evidenced by their purchase of Chipotle's Food Products.  Had they known of the true character and quality of the ingredients used in Chipotle's Food Products, Plaintiff and the putative class members would not have purchased (or would have paid less for) such products.

47. As a direct and proximate cause of Chipotle's misconduct, Plaintiff and the putative class members have suffered by consuming more GMO than they were led to believe and were otherwise placed at a higher risk of consuming more GMO's then they were led to believe.

48.  As a direct and proximate cause of Chipotle's misconduct, Plaintiff and the putative class members have suffered actual damages.  Defendant's conduct has been and is malicious, wanton and/or reckless and/or shows a reckless indifference to the interests and rights of others.

### CLASS ACTION ALLEGATIONS

49. Plaintiff brings this nationwide class action on behalf of herself and all members of the following class (the "Class"):  All persons residing in California, during the period April 27, 2015

to the present, who purchased and/or paid for Chipotle Food Products.  Excluded from the Class are: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant has a controlling interest, and its current or former employees, officers, and directors; (3) counsel for Plaintiff and Defendant; and (4) legal representatives, successors, or assigns of any such excluded persons.

50. The Class are so numerous that joinder of all members is impracticable.  Though the exact number and identities of Class members are unknown at this time, Defendant's sales as of 2018 resulted in revenues of $1.2 billion.  Moreover, Defendant has over 2,500 restaurants, with over 400 restaurants in California alone.  Based on these figures, it appears that the membership of the Class is in the tens of thousands.

51. Common questions of law and fact exist as to all Class members.  These common questions of law or fact predominate over any questions affecting only individual members of the Class.  Common questions include, but are not limited to, the following:

(a) Whether Defendant engaged in deceptive and unfair business and trade practices alleged herein;

(b) Whether Defendant knowingly concealed or omitted material information concerning the ingredients in its Food Products;

(c) Whether Defendant falsely and deceptively misrepresented in its advertisements and promotional materials, and other materials, that all of its Food Products were made with only "no-GMO ingredients";

(d) Whether Defendant represented that its Food Products and their ingredients have characteristics, uses, benefits, or qualities that they do not have;

(e) Whether the Class has been injured by virtue of Defendant's unfair and/or deceptive business practices and conduct;

(f) Whether Class members that purchased Defendant's Food Products suffered monetary damages and, if so, what is the measure of those damages; and

(g) Whether the Class is entitled to injunctive relief.

52. Plaintiff's claims are typical of the claims of the respective Class she seeks to represent, in that the named Plaintiff and all members of the proposed Class has suffered similar injuries as a result of the same practices alleged herein. Plaintiff has no interests adverse to the interests of the other members of the Class.

53. Plaintiff will fairly and adequately protect the interests of the Class, and has retained attorneys experienced in class actions as their counsel.

54. Plaintiff and other members of the Class have suffered damages as a result of Chipotle's unlawful and wrongful conduct. Absent a class action, Chipotle will retain substantial funds received as a result of its wrongdoing, and such unlawful and improper conduct shall, in large measure, not go remedied. Absent a class action, the members of the Class will not be able to effectively litigate these claims and will suffer further losses, as Defendant will be allowed to continue such conduct with impunity and retain the proceeds of its ill-gotten gains.

55. Plaintiff avers that the prerequisites for class action treatment apply to this action and that questions of law or fact common to the Class predominate over any questions affecting only individual members and that class action treatment is superior to other available methods for the fair and efficient adjudication of the controversy which is the subject of this action. Plaintiff further states that the interests of judicial economy will be served by concentrating litigation concerning these claims in this Court, and that the management of the Class will not be difficult.

# CLAIMS FOR RELIEF

## COUNT I

**(Violation of the California Consumer Legal Remedies Act, Cal. Civil Code §§ 1750, et seq.)**

56. Plaintiff repeats and realleges each and every allegation contained above, and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

57. The California Consumer Legal Remedies Act ("CLRA"), Civil Code section 1750, et seq., was designed and enacted to protect consumers from unfair and deceptive business practices.  To this end, the CLRA sets forth a list of unfair and deceptive acts and practices in Civil Code section 1770.

58. The CLRA applies to Defendant's actions and conduct described herein because it extends to the sale of goods or services for personal, family, or household use.

59. At all relevant times, Plaintiff and members of the Class were "consumers" as that term is defined in Civil Code section 1761(d).

60. The transactions from which this action arises include transactions involving the sale or lease of goods or services for personal, family, or household purposes within the meaning of Civil Code section 1761.

61. Chipotle's practices in connection with the marketing and sale of its Food Products violate the CLRA in at least the following respects:

(a) In violation of section 1770(a)(5), Defendant knowingly misrepresented the character, ingredients, uses and benefits of the ingredients in its Food Products;

(b) In violation of section 1770(a)(7), Defendant represented that the ingredients

in its Food Products are of a particular standard, quality or grade, which they are not; and

(c) In violation of section 1770(a)(9), Defendant knowingly advertised its Food Products with the intent not to sell the products as advertised.

62. Chipotle represents that all of its Food Products contain no genetically engineered material and omits to disclose that its Food Products necessarily contain GMO in order to convey to consumers that they are obtaining a product that provides more benefit and are safer for consumers than other restaurants which offer similar or substantially similar food products. These representations are false and misleading in that many of Chipotle's Food Products have ingredients that have or is highly likely to contain GMOs.

63. Defendant's acts and practices, undertaken in transactions intended to result and which did result in the purchase of its Food Products by consumers, violate Civil Code section 1770 and caused harm to Plaintiff and Class members who would not have purchased (or paid as much for) its Food Products had they known the truth. The acts and practices engaged in by Defendant that violate the CLRA include inducing Plaintiff and the Class to purchase (or pay more for) its Food Products than they would otherwise have paid had they known the truth.

64. Plaintiff was injured by purchasing (or overpaying for) Chipotle's Food Products.

65. In accordance with Civil Code section 1780(a), Plaintiff and members of the Class seek injunctive and equitable relief for violations of the CLRA. In addition, after mailing appropriate notice and demand in accordance with Civil Code sections 1782(a) & (d), Plaintiff will subsequently amend this Class Action Complaint to also include a request for damages. Plaintiff and members of the Class request that this Court enter such orders or judgments as may be necessary to restore to any person in interest any money which may have been acquired by means

of such unfair business practices, and for such other relief, including attorneys' fees and costs, as provided in Civil Code section 1780 and the Prayer for Relief.

## COUNT II

(Violation of California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, et seq.)

66. Plaintiff repeats and realleges each and every allegation contained above, and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

67. Each of the above misleading advertising practices of Chipotle set forth above constitutes untrue or misleading advertising under the California False Advertising Law ("FAL"), California Business & Professions Code section 17500, et seq.

68. At all material times, Defendant's marketing materials misrepresented or omitted to state that Defendant's Food Products contain ingredients that have GMOs. Chipotle's acts and practices have deceived and/or are likely to deceive members of the Class and the public.

69. Defendant is disseminating marketing and advertising concerning its Food Products, which by its nature is unfair, untrue, deceptive, or misleading within the meaning of California Business & Professions Code section 17500, et seq. Such advertisements are likely to deceive, and continue to deceive, the consumer/public.

70. In making and disseminating the statements alleged herein, Chipotle should have known its advertisements were untrue and misleading. Plaintiff and members of the Class based their decisions to purchase Chipotle Food Products in substantial part on Defendant's misrepresentations and omitted material facts.

71. Plaintiff and the Class are entitled to relief, including enjoining Defendant to cease and desist from engaging in the practices described herein.

## COUNT III

(Violation of California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq.)

72. Plaintiff repeats and realleges each and every allegation contained above, and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

73. Defendant has engaged in unfair competition within the meaning of California Business & Professions Code section 17200, et seq., because Defendant's conduct is unlawful, misleading and unfair as herein alleged.

74. Chipotle's business practices are unlawful because they violate the CLRA, FDCA, and FAL.

75. Chipotle's business practices are misleading because they were likely to deceive consumers into believing that they are obtaining a product that provides more benefit and is safer to consumers than other restaurants which offer similar or substantially similar food products.

76. Defendant's business practices, and each of them, are unfair because they offend established public policy and/or are immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers, which harm greatly outweighs any benefit associated with the business practice, in that Defendant omits to disclose material information about its products and, as such, consumers are led to believe that the products they were paying for had qualities that it did not have.

77. Plaintiff has standing to pursue this claim because she has been injured by virtue of suffering a loss of money and/or property as a result of the wrongful conduct alleged herein. Plaintiff would not have purchased Chipotle's Food Products (or paid as much for it) had she known the truth.

78. Plaintiff and the Class are entitled to relief, including full restitution and/or

-22-
**Complaint**

1    restitutionary disgorgement, to the greatest extent permitted by law, which may have been obtained

2    by Defendant as a result of such business acts or practices, and enjoining Defendant to cease and

3    desist from engaging in the practices described herein.

4        79. Chipotle's aforementioned actions and activities have been committed willfully with

5    an intent to damage Plaintiff and the Class, and have caused and will continue to cause damage and

6    irreparable harm and injury to Plaintiff and the Class unless and until such time as it is

7    preliminarily and permanently enjoined by this Court.

8

9                      PRAYER FOR RELIEF

10       WHEREFORE, Plaintiff, on behalf of herself and on behalf of the Class, prays for relief as

11   follows:

12       A. For an Order certifying this case as a class action against Chipotle and appointing

13   Plaintiff as Representative of the Class;

14       B. Awarding declaratory and injunctive relief as permitted by law or equity to assure

15   that the Class have an effective remedy, including enjoining Chipotle from

16   continuing the unlawful practices as set forth above;

17       C. Awarding all costs, including experts' fees and attorneys' fees, expenses and costs

18   of prosecuting this action; and

19       D. Such other and further relief as the Court may deem just and proper.

20

21

22

23   Dated: July 22, 2019,        Respectfully Submitted,

24                       LAW OFFICES OF QUYEN C. HOANG

25

26                     _____

27                     Quyen C. Hoang,

28                     Attorney for Plaintiff Melissa Cruz

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Quyen C. Hoang, CBN 192126<br>Law Office of Quyen C. Hoang<br>17011 Beach Blvd., Suite 900<br>Huntington Beach, CA 92647<br>TELEPHONE NO.: 714-369-8152   FAX NO:<br>ATTORNEY FOR *(Name):* Melissa Cruz | CONFORMED COPY<br>ORIGINAL FILED<br>Superior Court of California<br>County of Los Angeles<br><br>JUL 24 2019<br><br>Sherri R. Carter, executive officer/Clerk of Court<br>By _____, Deputy<br>Steven Drew<br>BY FAX |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Los Angeles
STREET ADDRESS: 111 North Hill St.
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Stanly Mosk Courthouse

CASE NAME:
Cruz v. Chipotle Mexican Grill Inc.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER:<br>19STCV25669 |
|---|---|---|---|---|
| [✓] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation<br>(Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | [ ] Antitrust/Trade regulation (03) |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property** | [ ] Other collections (09) | [ ] Mass tort (40) |
| **Damage/Wrongful Death) Tort** | [ ] Insurance coverage (18) | [ ] Securities litigation (28) |
| [ ] Asbestos (04) | [ ] Other contract (37) | [ ] Environmental/Toxic tort (30) |
| [ ] Product liability (24) | **Real Property** | [ ] Insurance coverage claims arising from the |
| [ ] Medical malpractice (45) | [ ] Eminent domain/Inverse | above listed provisionally complex case |
| [ ] Other PI/PD/WD (23) | condemnation (14) | types (41) |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | **Enforcement of Judgment** |
| [✓] Business tort/unfair business practice (07) | [ ] Other real property (26) | [ ] Enforcement of judgment (20) |
| [ ] Civil rights (08) | **Unlawful Detainer** | **Miscellaneous Civil Complaint** |
| [ ] Defamation (13) | [ ] Commercial (31) | [ ] RICO (27) |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | **Miscellaneous Civil Petition** |
| [ ] Professional negligence (25) | **Judicial Review** | [ ] Partnership and corporate governance (21) |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Other petition *(not specified above)* (43) |
| **Employment** | [ ] Petition re: arbitration award (11) | |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [ ] is [✓] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties     d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel     e. [ ] Coordination with related actions pending in one or more courts
       issues that will be time-consuming to resolve         in other counties, states, or countries, or in a federal court.
   c. [ ] Substantial amount of documentary evidence     f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [ ] monetary  b. [✓] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action *(specify):* 3, CLRA, FAL & UCL
5. This case [✓] is [ ] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 7/22/19

Quyen C. Hoang
_____
(TYPE OR PRINT NAME)     (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007]     **CIVIL CASE COVER SHEET**     Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courtinfo.ca.gov*

Scanned by CamScanner

| SHORT TITLE: Cruz v. Chipotle Mexican Grill | CASE NUMBER **19STCV25669** |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**BY FAX**

This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

### Applicable Reasons for Choosing Court Filing Location (Column C)

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| | A<br>Civil Case Cover Sheet Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| **Other Personal Injury/ Property Damage/Wrongful Death Tort** | Asbestos (04) | ☐ A6070  Asbestos Property Damage | 1, 11 |
| | | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 1, 11 |
| | Product Liability (24) | ☒ A7260  Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1, 4, 11 |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1, 4, 11 |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1, 4, 11 |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1, 4, 11 |
| | | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |

LASC CIV 109 Rev. 12/18
For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 1 of 4

Scanned by CamScanner

| SHORT TITLE: Cruz v. Chipotle Mexican Grill | CASE NUMBER |
|---|---|

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C** Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☑ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1, 2, 3 |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ A6109  Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, 5 |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 5, 6, 11 |
| | | ☐ A6012  Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ A6034  Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ A6031  Tortious Interference | 1, 2, 3, 5 |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation          Number of parcels_____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2, 6 |
| | | ☐ A6032  Quiet Title | 2, 6 |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2, 6, 11 |

**CIVIL CASE COVER SHEET ADDENDUM**
**AND STATEMENT OF LOCATION**

Scanned by CamScanner

| SHORT TITLE: Cruz v. Chipotle Mexican Grill | CASE NUMBER |
|---|---|
| | |

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C** Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2, 8 |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2 |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1, 2, 8 |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort<br>Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment | 2, 5, 11 |
| | | ☐ A6160  Abstract of Judgment | 2, 6 |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2, 9 |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2, 8 |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1, 2, 8 |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1, 2, 8 |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2, 8 |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment With Damages | 2, 3, 9 |
| | | ☐ A6123  Workplace Harassment With Damages | 2, 3, 9 |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case With Damages | 2, 3, 9 |
| | | ☐ A6190  Election Contest | 2 |
| | | ☐ A6110  Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ A6100  Other Civil Petition | 2, 9 |

LASC CIV 109 Rev. 12/18
For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 3 of 4

Scanned by CamScanner

| SHORT TITLE: Cruz v. Chipotle Mexican Grill | CASE NUMBER |
|---|---|
| | |

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON: | ADDRESS: |
|---|---|
| ☐ 1. ☐ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☐ 11. | |

| CITY: | STATE: | ZIP CODE: | |
|---|---|---|---|
| | | | |

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the ___Central___ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: 7/22/19

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LASC CIV 109 Rev. 12/18
For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 4 of 4

Scanned by CamScanner

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Spring Street Courthouse<br>312 North Spring Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>**07/24/2019**<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _____ Steve Drew _____ Deputy |
| **NOTICE OF CASE ASSIGNMENT**<br>**UNLIMITED CIVIL CASE** | |
| Your case is assigned for all purposes to the judicial officer indicated below. | CASE NUMBER:<br>19STCV25669 |

### THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

| | ASSIGNED JUDGE | DEPT | ROOM | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|
| ✔ | Amy D. Hogue | 7 | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record     Sherri R. Carter, Executive Officer / Clerk of Court

on 07/24/2019 _____     By Steve Drew _____, Deputy Clerk
     (Date)

LACIV 190 (Rev 6/18)     **NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**
LASC Approved 05/06

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007. They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within 15 days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date. All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference. These matters may be heard and resolved at this conference. At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status. If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California
County of Los Angeles**



**Los Angeles County
Bar Association
Litigation Section**

**Los Angeles County
Bar Association Labor and
Employment Law Section**



**Consumer Attorneys
Association of Los Angeles**



**Southern California
Defense Counsel**



**Association of
Business Trial Lawyers**

**California Employment
Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆Los Angeles County Bar Association Litigation Section◆

◆ Los Angeles County Bar Association
Labor and Employment Law Section◆

◆Consumer Attorneys Association of Los Angeles◆

◆Southern California Defense Counsel◆

◆Association of Business Trial Lawyers◆

◆California Employment Lawyers Association◆

LACIV 230 (NEW)
LASC Approved 4-11
For Optional Use

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:
E-MAIL ADDRESS (Optional):            FAX NO. (Optional):
ATTORNEY FOR (Name):

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION – EARLY ORGANIZATIONAL MEETING** | CASE NUMBER: |
|---|---|

This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement* on the following:

    a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

    b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

    c. Exchange of names and contact information of witnesses;

    d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

    e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

    f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

    g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h. Computation of damages, including documents, not privileged or protected from disclosure, on which such computation is based;

i. Whether the case is suitable for the Expedited Jury Trial procedures (see information at **_www.lacourt.org_** under "*Civil*" and then under "*General Information*").

2. The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-
         (INSERT DATE)                                    (INSERT DATE)
complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation. A copy of the General Order can be found at _www.lacourt.org_ under "*Civil*", click on "*General Information*", then click on "*Voluntary Efficient Litigation Stipulations*".

3. The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4. References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

_____          ➢  _____
(TYPE OR PRINT NAME)                               (ATTORNEY FOR PLAINTIFF)
Date:

_____          ➢  _____
(TYPE OR PRINT NAME)                               (ATTORNEY FOR DEFENDANT)
Date:

_____          ➢  _____
(TYPE OR PRINT NAME)                               (ATTORNEY FOR DEFENDANT)
Date:

_____          ➢  _____
(TYPE OR PRINT NAME)                               (ATTORNEY FOR DEFENDANT)
Date:

_____          ➢  _____
(TYPE OR PRINT NAME)                               (ATTORNEY FOR _____)
Date:

_____          ➢  _____
(TYPE OR PRINT NAME)                               (ATTORNEY FOR _____)

_____          ➢  _____
(TYPE OR PRINT NAME)                               (ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:       FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – DISCOVERY RESOLUTION | CASE NUMBER: |
|---|---|

This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

    a. The party requesting the Informal Discovery Conference will:

        i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

        ii. Include a brief summary of the dispute and specify the relief requested; and

        iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

    b. Any Answer to a Request for Informal Discovery Conference must:

        i. Also be filed on the approved form (copy attached);

        ii. Include a brief summary of why the requested relief should be denied;

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

    iii.   Be filed within two (2) court days of receipt of the Request; and

    iv.   Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

  c.  No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

  d.  If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied. If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

  e.  If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for Informal Discovery Conference shall be deemed to have been denied at that time.

4.  If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.  The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

  It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.  Nothing herein will preclude any party from applying ex parte for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.  Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.  References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

LACIV 036 (new)
LASC Approved 04/11
For Optional Use
    STIPULATION – DISCOVERY RESOLUTION
    Page 2 of 3

| SHORT TITLE | CASE NUMBER: |
|---|---|
| | |

**The following parties stipulate:**

Date:

_____        ➢ _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR PLAINTIFF)

Date:

_____        ➢ _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date:

_____        ➢ _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date:

_____        ➢ _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date:

_____        ➢ _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)

Date:

_____        ➢ _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)

Date:

_____        ➢ _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Received for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:  
E-MAIL ADDRESS (Optional):  
ATTORNEY FOR (Name):  

FAX NO. (Optional):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **INFORMAL DISCOVERY CONFERENCE**<br>(pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:
   - ☐ Request for Informal Discovery Conference
   - ☐ Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).

3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).

4. **For a Request for Informal Discovery Conference, briefly describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, briefly describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.**

LACIV 094 (new)  
LASC Approved 04/11  
For Optional Use

**INFORMAL DISCOVERY CONFERENCE**  
(pursuant to the Discovery Resolution Stipulation of the parties)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.: FAX NO. (Optional): E-MAIL ADDRESS (Optional): ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

| COURTHOUSE ADDRESS: |
|---|
| PLAINTIFF: |
| DEFENDANT: |

| STIPULATION AND ORDER – MOTIONS IN LIMINE | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

---

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

**The following parties stipulate:**

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

> _____
(ATTORNEY FOR PLAINTIFF)

> _____
(ATTORNEY FOR DEFENDANT)

> _____
(ATTORNEY FOR DEFENDANT)

> _____
(ATTORNEY FOR DEFENDANT)

> _____
(ATTORNEY FOR _____ )

> _____
(ATTORNEY FOR _____ )

> _____
(ATTORNEY FOR _____ )

**THE COURT SO ORDERS.**

Date: _____

_____
JUDICIAL OFFICER

---

LACIV 075 (new)
LASC Approved 04/11     **STIPULATION AND ORDER – MOTIONS IN LIMINE**     Page 2 of 2



# Superior Court of California, County of Los Angeles

## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS** must serve this ADR Information Package on any new parties named to the action with the cross-complaint.

### What is ADR?

ADR helps people find solutions to their legal disputes without going to trial. The main types of ADR are negotiation, mediation, arbitration and settlement conferences. When ADR is done by phone or computer, it may be called Online Dispute Resolution (ODR). These "alternatives" to litigation and trial are described below.

### Advantages of ADR

- **Saves Time:** ADR is faster than going to trial.
- **Saves Money:** Parties can save on court costs, attorney's fees and witness fees.
- **Keeps Control** with the parties: Parties choose their ADR process and provider for voluntary ADR.
- **Reduces stress/protects privacy:** ADR is done outside the courtroom, in private offices, by phone or online.

### Disadvantages of ADR

- **Costs:** If the parties do not resolve their dispute, they may have to pay for ADR and litigation and trial.
- **No Public Trial:** ADR does not provide a public trial or a decision by a judge or jury.

### Main Types of ADR:

1. **Negotiation:** Parties often talk with each other in person, or by phone or online about resolving their case with a settlement agreement instead of a trial. If the parties have lawyers, they will negotiate for their clients.

2. **Mediation:** In mediation, a neutral "mediator" listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to try to create a settlement agreement that is acceptable to all. Mediators do not decide the outcome. Parties may go to trial if they decide not to settle.

   **Mediation may be appropriate when the parties**
   - want to work out a solution but need help from a neutral person.
   - have communication problems or strong emotions that interfere with resolution.

   **Mediation may not be appropriate when the parties**
   - want a public trial and want a judge or jury to decide the outcome.
   - lack equal bargaining power or have a history of physical/emotional abuse.

LASC1

LASC CIV 271 NEW 03/19
For Mandatory Use
California Rules of Court, rule 3.221

---

**How to arrange mediation in Los Angeles County**

Mediation for civil cases is voluntary and parties may select any mediator they wish. Options include:

a. **The Civil Mediation Vendor Resource List**

Parties may contact these organizations to request a "Resource List Mediation" for reduced-cost or free (for selected cases) mediation in person or with ODR (by phone or online).

- JAMS, Inc.: Case Manager (213) 253-9776 mdawson@jamsadr.com
- Mediation Center of Los Angeles: Case Manager: (833) 476-9145 info@mediationLA.org

These organizations cannot accept every case and they may decline cases at their discretion.

Visit www.lacourt.org/ADR.Res.List for important information and FAQs before contacting them.

NOTE: This service is not available for family law, probate or small claims.

b. **Los Angeles County Dispute Resolution Programs**

https://wdacs.lacounty.gov/programs/drp/

- Free, day-of-trial mediations at the courthouse for small claims, unlawful detainers (evictions) and, at the Stanley Mosk Courthouse, limited civil. No appointment needed.
- Free or low-cost mediations before the day of trial for these and other case types.
- For ODR by phone or computer for small claims or unlawful detainer (eviction) cases before the day of trial, visit http://www.lacourt.org/division/smallclaims/pdf/OnlineDisputeResolutionFlyer-EngSpan.pdf

c. Mediators and ADR and Bar organizations that provide mediation may be found on the internet.

---

3. **Arbitration**: Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome. In "binding" arbitration, the arbitrator's decision is final; there is no right to trial. In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision. For more information about arbitration, visit http://www.courts.ca.gov/programs-adr.htm

4. **Mandatory Settlement Conferences (MSC)**: MSCs are ordered by the Court and are often held close to the trial date. The parties and their attorneys meet with a judge or settlement officer who does not make a decision but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. For information about the Court's MSC programs for civil cases, visit: **www.lacourt.org/division/civil/settlement**

Los Angeles Superior Court ADR website: www.lacourt.org/division/civil/settlement
For general information and videos about ADR, visit http://www.courts.ca.gov/programs-adr.htm